AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

REINALDO SUAREZ,

*Defendant*

Case No. 24-MJ- 572

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about June 26, 2024, in the County of Monroe, in the Western District of New York, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); | Possession of heroin, methamphetamine, and fentanyl, with intent to distribute; |
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm. |

This Criminal Complaint is based on these facts:

See attached affidavit.

☒ Continued on the attached sheet.

*[signature]*

SCOTT KENDALL, Special Agent
Homeland Security Investigations

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate ~~telephonically~~ pursuant to Fed.R.Crim.P. 4.1 and 4(d) on:
Date: June 26, 2024   *in person JP*

City and State:  Rochester, New York

*[signature]*

HON. MARK W. PEDERSEN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

24-MJ-572

REINALDO SUAREZ,

Defendant.

STATE OF NEW YORK   )
COUNTY OF MONROE  )   SS:
CITY OF ROCHESTER  )

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, SCOTT M. KENDALL, being duly sworn, depose and state:

1. I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and have been so employed since March 2021. I am currently assigned to the HSI Rochester office. My responsibilities include investigating violations of federal and state criminal laws, including crimes involving narcotics trafficking. As such, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516, and Title 21 of the United States Code.

2. This affidavit is submitted in support of a Criminal Complaint charging Reinaldo SUAREZ with violations of Title 18, United States Code, Section 922(g)(1), Felon in Possession of a Firearm/Ammunition, and Title 21, United States Code, Section 841(a)(1), 841(b)(1)(C) (Possession of heroin, a Schedule I controlled substance; methamphetamine and

fentanyl, Schedule II controlled substances, with intent to distribute).

3. As more fully described below, the facts in this affidavit are based on, among other things, a review of reports and documents completed by law enforcement agencies and conversations with other law enforcement officers assigned to this investigation, including members of HSI, the New York State Police (NYSP), and the Ontario County Sheriff's Office (OCSO), among other agencies, a review of covert camera surveillance footage, public and restricted records checks, information from reliable confidential sources, and evidence located and seized during the execution of court-authorized search warrants. The conclusions drawn in this affidavit are based on my training and experience as well as the advice of other experienced federal, state and local narcotics investigators. Since this affidavit is being submitted for a limited purpose, I have not included every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that the above-named defendant committed the above-described offenses. In support thereof, I respectfully state the following:

## AFFIANT'S BACKGROUND

4. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in, among other topics, criminal investigative techniques and federal criminal law. I have also received training in the federal laws pertaining to the possession and distribution of narcotics. During my tenure with HSI, I have participated in numerous narcotics investigations during which I have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations of drug traffickers. Through my training, education, and experience, (including monitoring

wiretapped conversations of drug traffickers and conducting surveillance on individuals engaged in drug trafficking) I have become familiar with the manner in which illegal drugs (including cocaine and fentanyl, among others,) are imported, stored, transported, and distributed, as well as methods of payment for such drugs. I am also familiar with the manner in which proceeds from narcotics trafficking are laundered, and the efforts and strategies drug traffickers will employ to avoid detection by law enforcement. I am aware of the fact that those who distribute controlled substances often use cryptic, coded or otherwise indirect language when discussing their illegal activities over the telephone. I am also aware of the fact that drug traffickers will often add adulterants or other additives to their controlled substances to increase the quantity of their distributable product, thereby increasing their profits. I know that drug traffickers often use firearms in order to protect themselves, their narcotics, and drug proceeds from rival drug traffickers and/or potential robbers. Therefore, drug traffickers are frequently in possession of firearms for these purposes.

## BACKGROUND OF INVESTIGATION

5. Since May 2023, members of the OCSO Special Investigations Unit (SIU), NYSP Violent Gang and Narcotics Enforcement Team (VGNET), among other agencies, have been investigating drug trafficking organization (DTO) in the Geneva, New York area. The investigation has utilized surveillance (physical and electronic), GPS tracker warrants, cellular ping warrants, and state-authorized cellular telephone eavesdropping warrants to monitor and record conversations of the members and associates of this organization.

6. Over the course of this investigation, numerous eavesdropping warrants were obtained for telephone numbers used by this organization. Through lawful cellular

eavesdropping, paired with physical/electronic surveillance and other investigative activity, the investigative team identified a hierarchy of narcotics suppliers operating locally and out-of-state. The defendant, Reinaldo SUAREZ ("SUAREZ") of Rochester, NY was identified as a source of supply for this DTO. All of the intercepted telephone calls, text messages, and corresponding location/ping data referred to in this affidavit were obtained through lawful eavesdropping warrants, issued by the Honorable Frederick Reed, Acting Ontario County Supreme Court Judge, on various dates over the course of this investigation.

## FACTS ESTABLISHING PROBABALE CAUSE

7. On or about June 26, 2024, law enforcement executed multiple state-authorized search warrants at residences in Rochester, NY and Geneva, NY. One of the locations searched was 143 Knickerbocker Avenue, Rochester, NY (hereinafter referred to as the TARGET RESIDENCE. These search warrants were authorized by the Honorable Frederick Reed, Acting Ontario County Supreme Court Judge. Throughout the course of the investigation, law enforcement identified this address to be the primary residence of SUAREZ, as well as his girlfriend and her son. Additionally, this address is listed as SUAREZ's address on file with the New York State Department of Motor Vehicles for his driver's license and vehicle registrations.

8. At approximately 5:00 a.m., members of the New York State Police (NYSP) Special Operations Response Team (SORT) approached and surrounded the TARGET RESIDENCE and began making announcements that the police were on-scene and that the residents of the TARGET RESIDENCE should come outside. SUAREZ, his girlfriend, and his girlfriend's son exited the residence and were taken into custody by SORT members.

9. After the residence was secured by law enforcement, a search team comprised of NYSP personnel conducted a lawful search of the TARGET RESIDENCE and recovered a Stevens Model 320 12-gauge shotgun, loaded with five 12-gauge slugs and bearing serial number 150723G, from the master bedroom. A box of five 12-gauge slugs were also located and seized from the master bedroom.

10. In connection with this investigation, I reviewed a criminal history for SUAREZ, which revealed that he has multiple felony convictions in which he has served terms of imprisonment exceeding one year. For example, on February 27, 2007 SUAREZ was convicted of Conspiracy to Possess with Intent to Distribute, and to Distribute, 500 grams or More of Cocaine, for which he was sentenced to 200 months imprisonment, in District Court for the Western District of New York.

11. Law enforcement also executed five state-authorized search warrant at 500 Avis Street, Rochester, NY, which is a commercial warehouse building housing multiple garage units that are used by tenants for storage or commercial use. Throughout the course of this investigation, members of the investigative team conducting physical and video surveillance have observed SUAREZ at this location on numerous occasions, often meeting with other individuals suspected of narcotics activity. Additionally, a tenant list provided by the owner of the property lists "Reinaldo Suaizez" as the tenant of Unit 16, with a lease start date of 2/1/2024. Law enforcement arrived at the location and utilized tools to cut a lock off the garage door leading to Unit 16. A Toyota 4Runner registered to SUAREZ was found within this unit, as well as a Can-Am, which law enforcement had identified belonging to SUAREZ. A motorcycle registered to SUAREZ was also found locked within this unit. Through surveillance conducted at the 500 Avis Street location, SUAREZ was observed at

this location on a frequent, near daily basis, over the last several months. He also referred to this location as "the shop" over intercepted communications.

12. Upon entry and search, investigators located a backpack on the floor of a smaller adjoining room off the main garage bay area. Inside this backpack were ten brown-colored square-shaped objects wrapped in knotted plastic bags, a knotted plastic bag containing a white-colored rock-like substance, and four plastic bags containing a gray/brown powdery substance.

13. Upon field testing and weighing on a scale, the brown-colored objects tested positive for the presence of heroin and weighed a total of approximately 1024 grams (with packaging), the white rock-like substance tested positive for the presence of methamphetamine and weighed approximately 121 grams (with packaging), and the gray/brown powdery substances in the four plastic bags tested positive for the presence of fentanyl and weighed approximately 81 grams (with packaging).

14. Based on my training, experience, and knowledge of the investigation, I believe that SUAREZ utilized this unit as a location to store and distribute narcotics. Additionally, based on the information gleaned throughout the investigation, SUAREZ has been identified as a major narcotics supplier and trafficker in the Rochester, N.Y. area, and the narcotics recovered inside this unit are indicative of this activity. I therefore believe he possessed these controlled substances with an intent of distributing them.

15. SUAREZ was transported to the Rochester Public Safety Building to be interviewed. At approximately 9:03 a.m., NYSP Investigator Anthony Gower, accompanied by Your Affiant and OCSO Investigator Zachary Hudgins, read SUAREZ his *Miranda* rights, which SUAREZ waived at 9:04 a.m. and agreed to speak with investigators. SUAREZ was

advised that search warrants had been executed for his residence and his "shop" at the Avis Street location. In summary, SUAREZ stated that he is responsible for anything recovered from his residence and the shop. He advised that the shotgun at his residence was his, but that he would never pull it on anyone.

16. I have consulted with an ATF Special Agent, Nexus Expert Justin Schaefer. He advised me that based upon a description of the shotgun it was not manufactured in the state of New York. Therefore, by virtue of its presence in New York, it has traveled in interstate or foreign commerce.

## CONCLUSION

17. Based on the foregoing information, your affiant submits that probable cause exists to believe that on or about June 26, 2024, in the Western District of New York, Reinaldo SUAREZ committed violations of Title 18, United States Code, Section 922(g)(1), (Felon in Possession of a Firearm/Ammunition), and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (Possession of Heroin, a Schedule I Substance; Methamphetamine and Fentanyl, Schedule II Substances, with Intent to Distribute).

_____
Scott M. Kendall
Special Agent
Homeland Security Investigations

Affidavit and Criminal Complaint submitted electronically
by email in .pdf format. Oath administered, and contents
and signature attested to me and before me as true and accurate
~~telephonically~~ *in person* pursuant to Fed.R.Crim.P. 4.1 and 4(d)
on June __26__, 2024.

_____
HONORABLE MARK W. PEDERSEN
United States Magistrate Judge